# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-CR-00591 ERW/NAB |
| ) | |
| ABDUL NAUSHAD and ) | |
| WAJIHA NAUSHAD, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Nannette A. Baker [ECF No. 129], pursuant to 28 U.S.C. § 636(b)(1), recommending denial of Defendants Abdul Naushad and Wajiha Naushad's (collectively "Defendants") Joint Motion to Dismiss Second Superseding Indictment [ECF No. 112]. Defendants filed Defendants' Joint Objection to Report and Recommendation of the U.S. Magistrate Judge Denying Defendants' Joint Motion to Dismiss the Second Superseding Indictment. ECF No. 132. The United States Attorney's Office filed Government's Response to Defendants' Joint Objection to Report and Recommendation of the U.S. Magistrate Judge Denying Defendants' Joint Motion to Dismiss the Second Superseding Indictment. ECF No. 133. Defendants then filed Defendants' Joint Reply to the Government's Response to the Objection to Report and Recommendation of the U.S. Magistrate Judge Denying Defendants' Joint Motion to Dismiss the Second Superseding Indictment. ECF No. 134.

The Court has reviewed the motions, evidence, and arguments from the evidentiary hearing. Based on this review, the Court concludes the magistrate judge made proper findings and correctly analyzed the issues.

I.      BACKGROUND

Defendants were first charged in a twenty-one-count indictment on July 25, 2019. ECF No. 1. Counts 1 to 8 of the indictment charged Defendants with Receipt or Delivery in Interstate Commerce of an Adulterated Device with the Intent to Defraud. *Id.* at ¶¶ 16-26. Counts 9 and 10 charged Defendants with Smuggling Goods into the United States. *Id.* at ¶¶ 27-30. Lastly, Counts 11 to 21 charged Defendants with Health Care Fraud. *Id.* at ¶¶ 31-46.

Defendants filed a Joint Motion to Dismiss the Indictment. ECF No. 45. Defendants argued Counts 1 to 8 of the indictment should be dismissed because: (1) the indictment failed to allege a violation of 21 U.S.C. § 331(c) because the Orthovisc at issue is not "adulterated" as a matter of law; (2) the Orthovisc was not "delivered or proffered for delivery" as a matter of law; and (3) the indictment failed to allege any facts to suggest Defendants acted with an intent to defraud. *Id.* at p. 3. Defendants argued Counts 9 and 10 of the indictment should be dismissed because the indictment failed to allege a violation of 18 U.S.C. § 545 as the importation of Orthovisc was not contrary to law. *Id.* at pp. 3-4. Lastly, Defendants argued Counts 11 to 21 should be dismissed because the indictment did not allege a violation of 18 U.S.C. § 1347 as the acts described in the indictment did not constitute a scheme to defraud a health care benefits program. *Id.* at p. 4.

After a hearing on Defendants' motion, Magistrate Judge Baker issued her Report and Recommendation which recommended dismissal of two of the twenty-one counts. ECF No. 79. Defendants filed objections to the Report and Recommendation. ECF No. 86. This Court overruled Defendants' objections and sustained the Report and Recommendation. ECF No. 91.

The Second Superseding Indictment ("Second Indictment") was returned against Defendants on August 5, 2020. ECF No. 100. The Second Indictment charges Defendants with

one count of conspiracy, six counts of delivery of a misbranded medical device, six counts of delivery of an adulterated medical device, and eleven counts of health care fraud.

Defendants filed a motion to dismiss the Second Indictment on September 21, 2020. ECF No. 112. The Government filed a response in opposition to Defendants' motion to dismiss on October 5, 2020. ECF No. 119. The Defendants filed a reply in support of their motion to dismiss on November 6, 2020. ECF No. 126. Magistrate Judge Baker held a hearing on November 18, 2020. ECF 128.

Magistrate Judge Baker issued a Report and Recommendation on January 20, 2021. ECF No. 129. In her Report, Judge Baker found Counts 8 to 13 sufficiently alleged the essential facts necessary and found Counts 2 to 7 and 8 to 13 were not multiplicitious. *Id.* Defendants object to Magistrate Judge Baker's denial of their joint motion to dismiss the Second Indictment. ECF No. 132.

## II.     LEGAL STANDARD

The Court conducts a *de novo* review of those portions of a report or specified proposed findings to which timely objection is made. 28 U.S.C. § 636(b)(1); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). "The failure to perform de novo review when required is reversible error." *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995)

Some circuits have found de novo review is not required if a party makes general objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations. *Id.*, (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). However, "the Eighth Circuit has repeatedly emphasized the necessity of de novo review, and thus retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Id.* (internal citations and quotations omitted).

3

**III.    DISCUSSION**

Defendants contend the Second Indictment should be dismissed because of the arguments made in the motion to dismiss the original indictment relating to the adulteration and fraud counts.[1] ECF No. 132. Specifically, Defendants assert the Orthovisc at issue was not adulterated as a matter of law and therefore Counts 8 through 13 should be dismissed. *Id.* Alternatively, Defendants argue the counts alleging misbranding and the counts alleging adulteration are multiplicitous and they ask this Court to order the Government to elect which counts it chooses to advance.

Defendants then raise three specific objections to the Report and Recommendation. *Id.* Defendants object to Magistrate Judge Baker's Report and Recommendation denying the motion to dismiss because (1) the Government charged Defendants under a statute which does not apply to the facts alleged; (2) even if the Court finds § 351(f)(1)(B) applies to "new devices," the Government's claim the Orthovisc at issue is a "new device" because it lacked FDA-approved labeling is decimated by 21 U.S.C. § 352(f); and (3) "the government's newfangled adulteration theory runs it into a multiplicity problem."

The facts of this case alleged in the Second Indictment, relevant to the joint motion to dismiss, are as follows:

Dr. Abdul Naushad was a medical doctor, licensed to practice medicine in the State of Missouri, who owned and operated several pain clinics in Missouri known as "Advanced Pain Center" (hereinafter "APC"). *Id.* at ¶ 1. He had been approved as both a Medicare and Medicaid

---

[1] Defendants "incorporate the arguments relating to adulteration and fraud counts in their motion to dismiss the original indictment [ECF No. 45] and their Objections to the Report and Recommendation. [ECF No. 86] The Naushads understand that those issues already have been decided by the Court but re-raise them here to avoid any possibility that they may be deemed waived in the future." ECF No. 132 at p. 4.

provider since 2002, and he also had submitted reimbursement claims to other health care benefits programs, including Tricare. *Id.* at ¶ 3. Dr. Naushad's wife, Wajiha Naushad, jointly managed the APC clinics with her husband, and she was responsible for ordering and managing the medical devices and drugs at the APC clinics. *Id.* at ¶ 2.

The United States Department of Health and Human Services ("US HHS") administers Medicare, a federal health benefits program. *Id.* at ¶ 4. Medicare will only reimburse health care providers for drugs or medical devices which have been approved by the FDA. *Id.* A health care provider must execute a written provider agreement with Medicare in order to be reimbursed, and the agreement obligates the health care provider to know, understand, and follow all rules and regulations. *Id.* As part of his application process to provide Medicare services, Dr. Naushad signed a form which informed him of the penalties for falsifying information when seeking reimbursement from the Medicare program, and he signed a provider agreement which provided in part: "I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." *Id.* at ¶¶ 7-8.

In addition to being a Medicare provider, Dr. Naushad was also enrolled as a Missouri Medicaid provider. *Id.* at ¶ 11. The Medicaid program is both a federal and state funded program. *Id.* The US HHS administers the program on a federal level, and the Missouri Department of Health and Human Services ("MO HHS") administers the Missouri Medicaid program, called MO HealthNet. *Id.* The Medicaid program only reimburses for drugs and medical devices which have been approved by the United States Food and Drug Administration ("FDA"). *Id.* To receive reimbursement for medical services provided to Medicaid recipients, a Medicaid provider must enter into a written agreement with MO HealthNet and must agree to

abide by MO HealthNet's regulations in rendering services and billing for those services. *Id.* at ¶¶ 11-12.

The FDA is a federal agency which enforces provisions of the Food, Drug, and Cosmetics Act, ("FDCA") 21 U.S.C. §§ 301, *et seq*. ECF No. 100 ¶ 13. One of the FDA's responsibilities is to regulate the manufacturing, labeling, and distribution of medical devices shipped in interstate commerce to ensure the devices are safe and effective and have labeling which contain true and accurate information. *Id.* at ¶ 14.

Orthovisc is a prescription medical device, manufactured by ANIKA Therapeutics, which is a single use syringe, filled with a solution of hyaluronan, a natural chemical found in the human body. *Id.* at ¶ 23. Hyaluronan is found in the joint tissues and fluid that fills the joints which acts like a lubricant and a shock absorber in the joints. *Id.* Orthovisc is approved in the United States for patients with osteoarthritic pain in the knees who do not get adequate pain relief from simple pain relievers or exercise. *Id.* at ¶ 24. Orthovisc is injected directly into the knee joint, and the FDA has only approved Orthovisc for use under the supervision of a licensed practitioner. *Id.*

In February 2007, hyaluronic acid sodium was shipped to one of Defendants' pain clinics; however, a notice of FDA action was sent to the APC clinic advising the hyaluronic acid sodium was refused admission to the United States because the hyaluronic acid sodium appeared to be a new drug without an approved new drug application. *Id.* at ¶ 28. After receiving the FDA notice, Defendants purchased Orthovisc online from a Canadian company, with the lot number indicating the device was to be sold in 16 countries, but not the United States. *Id.* at ¶¶ 30-38. The shipments were delivered to Defendants' home, and several shipments were personally received and signed for by Mrs. Naushad. *Id.* at ¶¶ 32-33. Invoices received by

6

Defendants reflected a purchase price of approximately $37-55 per unit for the foreign Orthovisc, whereas during the same period, FDA approved Orthovisc cost approximately $110-154 per unit. *Id.* at ¶ 34.

APC clinic employees were usually responsible for ordering needed drugs and supplies; however, they were not authorized to order Orthovisc for the APC clinic. *Id.* at ¶ 35. Defendants did not tell the employees at the clinic, or any of the patients receiving Orthovisc, the Orthovisc was purchased outside of the United States and not approved by the FDA. *Id.* at ¶ 37.

### A. Law Relevant to Motion to Dismiss

A motion to dismiss a criminal Indictment starts with Rule 7 of the Federal Rules of Criminal Procedure, which provides:

> The Indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the Indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)).

7

### a. Count 1

Defendants requested the entire Second Indictment be dismissed; however, they failed to develop any argument regarding the conspiracy charged in Count 1. Count 1 of the Second Superseding Indictment charges Defendants with Conspiracy in violation of 18 U.S.C. § 371 and alleges Defendants willfully and knowingly conspired to defraud and commit offenses against the United States, specifically: interfered and obstructed the lawful functions of the FDA through dishonest means by interfering with and obstructing the FDA's regulation of medical devices; with the intent to defraud and mislead, delivered for pay misbranded and adulterated devices; and knowingly and willfully executed or attempted to execute a scheme and artifice to defraud a health care benefit program in connection with delivery and pay for health care benefits in violation of 18 U.S.C. § 1347(a)(1). ECF No. 100 ¶ 40.

"An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)). "The essential elements of a section 371 conspiracy crime are that: (1) the defendants agreed with another, (2) to commit crimes against the United States or violate the laws of the United States, and (3) at least one overt act was committed in furtherance of the agreement." *Hayes*, 574 F.3d at 472 (citing 18 U.S.C. § 371).

> [Where] the superceding indictment tracks the language of the conspiracy statute, identifies the federal criminal laws that are the subjects of the conspiracy, alleges each of the essential elements of the crime of conspiracy, states the nature of the fraudulent scheme that was the subject of the conspiracy, specifies the approximate time period during which the conspiracy took place, states the place from which the scheme was allegedly operated, and specifies overt acts that

>furthered the conspiracy, the superceding indictment is sufficient as it pertains to the conspiracy charge.

*Hayes*, 574 F.3d at 473, (citing *Sewell*, 513 F.3d at 821).

Here, the Second Indictment properly alleges Defendants violated 18 U.S.C. § 371. Count 1 of the Second Indictment tracks the language of the conspiracy statute and identifies the federal criminal laws, 21 U.S.C. §§ 331(c) and 333(a)(2), as well as 18 U.S.C. §§ 2 and 1347(a)(1), which are subjects of the conspiracy. Count 1 alleges all of the essential elements of the crime of conspiracy, as it alleges: (1) Defendants conspired (2) to interfere and obstruct with the lawful functions of the FDA through dishonest means, by interfering with and obstructing the FDA's regulation of medical devices; to deliver for pay adulterated and misbranded medical devices, with the intent to defraud and mislead; to knowingly and willingly execute or attempt to execute a scheme and artifice to defraud a heath care benefit program in connection with delivery for pay for health care benefits; and (3) in furtherance of the conspiracy, on several days in 2015 and 2016, Defendants caused checks to be issued to Willow Creek, and received and signed for deliveries from Willow Creek. Count 1 also states the nature of the fraudulent scheme that was the subject of the conspiracy; specifically the Second Indictment alleges as part of the conspiracy Defendants purchased and had delivered to them in the United States, non-FDA approved Orthovisc, despite FDA approved Orthovisc being available in the United States for a higher cost. Count 1 further alleges they then transported the non-FDA approved Orthovisc from their residence to the APC clinics where it was administered to patients and then reimbursement claims were submitted to Medicare and Medicaid despite their knowledge that the health care benefits programs would not pay for non-FDA approved devices.

The Court finds Count 1 of the Second Indictment properly charges Defendants with conspiracy. Defendants' motion to dismiss is denied regarding Count 1.

9

### b. Counts 2 through 7

Like Count 1, although Defendants requested the entire Second Indictment be dismissed they failed to develop any argument regarding the misbranding counts charged in Counts 2-7. Rather, they state as a conclusion "the government's misbranding case is without merit," in their joint motion to dismiss. ECF No. 112 p. 2.

"An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *Hayes*, 574 F.3d at 472 (8th Cir. 2009) (quoting *Sewell*, 513 F.3d at 821).

Counts 2-7 of the Second Indictment charge Defendants with receiving and delivering a misbranded medical device with the intent to defraud and mislead in violation of 21 U.S.C. § 331(c), 21 U.S.C. § 333(a)(2), and 18 U.S.C. § 2. 21 U.S.C. § 331(c) states: "The following acts and the causing thereof are prohibited: … (c) The receipt in interstate commerce of any … device … that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise." 21 U.S.C. § 333(a)(2) states that if a person commits a violation of § 331 "with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both." 18 U.S.C. § 2 states:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Second Indictment charges Defendants with misbranding in Counts 2-7, and each count specifies a separate date along with a description of the misbranded devices and from what

country the devices were shipped.  ECF No. 100 ¶¶ 47-48.  The Second Indictment alleges the misbranded devices were non-FDA approved Orthovisc, which were misbranded within the meaning of 21 U.S.C. §§ 352(f)(1) and (2) in that the labeling failed to bear adequate directions for use and failed to bear adequate warnings.  *Id.*

The Second Indictment properly charges Defendants in Counts 2-7.  The indictment contains the elements of the offense under which Defendants are charged and informs them of what they must defend against.  Defendants' motion to dismiss is denied regarding Count 2-7.

### c. Counts 8 through 13

Defendants main argument relates to the adulteration counts charged in the Second Indictment.  In Counts 8-13, Defendants are charged with receiving and delivering an adulterated medical device with the intent to defraud and mislead in violation of 21 U.S.C. § 331(c), 21 U.S.C. § 333(a)(2), and 18 U.S.C. § 2.  ECF No. 100 ¶¶ 49-50.  The Second Indictment alleges Defendants, "with the intent to defraud and mislead, did receive, and caused to be received, in interstate commerce and did deliver and proffer, and caused to be delivered and proffered, for pay or otherwise, an adulterated device, specifically non-FDA approved Orthovisc, that was adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B)."  *Id.*

Defendants contend the Orthovisc was not adulterated under the plain language of 21 U.S.C. § 351(f)(1)(B).  The statute provides certain class III devices are adulterated if:

> (1) If it is a class III device—
>
> (B)(i) which was classified under section 360c(f) of this titled into class III, which under section 360e(a) of this title is required to have in effect an approved application for premarket approval, and which is not exempt from section 360e of this title under section 360j(g) of this title, and
>
> (ii) which has an application which has been suspended or is otherwise not in effect.

11

21 U.S.C. § 351.

Defendants argue the counts should be dismissed because the Second Indictment does not allege Orthovisc's premarket approval application had been suspended. However, the statute does not require that the premarket approval application be suspended by the FDA, it also deems a device adulterated if there is not an application for premarket approval in effect.

As alleged, the imported Orthovisc is a Class III medical device and subject to premarket approval. The Second Indictment clearly states the foreign Orthovisc was "non-FDA-approved." ECF No. 100 ¶ 26. Because a Class III medical device's premarket approval application must be approved by the FDA to be in effect, and as the device ordered and received by Defendants as alleged was non-FDA approved Orthovisc, the Government has sufficiently alleged the non-FDA approved Orthovisc was adulterated.

Defendants now, for the first time, argue the Government's claim the Orthovisc at issue is a "new device" because it lacked FDA-approved labeling is decimated by 21 U.S.C. § 352(f), which states in part, "Required labeling for prescription devices intended for use in health care facilities or by a health care professional … may be made available solely by electronic means." However, again, the allegation in the Second Indictment is not merely regarding the writing on the box, but rather the foreign Orthovisc was not approved by the FDA. *Id.*

The Court holds the Second Indictment sufficiently alleges facts and law to assert criminal charges under 21 U.S.C. § 331(c). Whether the Government is able to prove its case beyond a reasonable doubt will be determined at trial, and Defendants have failed to show the Government should not be allowed to try to make its case before a jury. *See United States v. Walters*, No. 4:10CR00586AGF, 2011 WL 1793347, at *2 (E.D. Mo. May 11, 2011).

### d. Counts 14 through 24: Health Care Fraud

Like in Count 1 and Counts 2-7, although Defendants requested the entire Second Indictment be dismissed, they did not present any argument as to why Counts 14-24 should be dismissed. Counts 14-24 charge Defendants with health care fraud, in violation of 18 U.S.C. §§ 1347(a)(1) and 2.

The essential elements of health care fraud under 18 U.S.C. § 1347(a) are:

> (1) the defendant knowingly executed a scheme to defraud Medicare or Medicaid, (2) with the intent to defraud, (3) in connection with payment for health care benefits or services, and (4) the Medicare Program and Medicaid Program are public health care plans, affecting commerce, under which health care benefits or services were provided to individuals.

*United States v. Golding*, 972 F.3d 1002, 1006 (8th Cir. 2020) (citing 18 U.S.C. § 1347(a)).

The Second Indictment alleges Defendants purchased "foreign, non-FDA-approved medical devices, including … Orthovisc, from foreign countries and thereby caused it to be illegally imported into the United States." ECF No. 100 at ¶ 52. The Second Indictment further alleges Defendants "concealed the illegal purchases from the FDA, Medicare, Medicaid, and other regulatory agencies, and they failed to inform patients the non-FDA approved Orthovisc would be injected into their bodies." *Id.* at ¶ 53. The Second Indictment alleges as part of the scheme to defraud Defendants submitted reimbursement claims to insurers with a CPT code that falsely represented the patients identified in the claims received FDA approved Orthovisc, knowing insurers would not pay for non-FDA approved drugs or devices. *Id.* at ¶¶ 54-55; *see id.* at ¶¶ 4-12. Counts 14-24 also each set forth the patient's initials, the date of service, the date the claim was submitted, the CPT code, and the insurers. *Id.* at ¶ 56.

The Court finds the Second Indictment properly alleges Defendants committed health care fraud. As a result, Counts 14-24 should not be dismissed.

13

### B. Multiplicity

Defendants argue Magistrate Judge Baker's Report and Recommendation should be rejected and the Court should order the Government to proceed on *either* Counts 2 through 7 *or* Counts 8 through 13. Defendants further claim the "Report relies on its made-up 'importation' element to attempt to deny the Naushads relief." Defendants argue the actual elements of adulteration and misbranding prohibit them from being penalized for both.

"An indictment is multiplicitous if it charges the same crime in two counts." *United States v. Chipps*, 410 F.3d 438, 447. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "The rule against multiplicitous prosecutions is based on the Fifth Amendment's Double Jeopardy Clause, which 'protects against multiple punishments for the same offense.'" *United States v. Hinkeldey*, 626 F.3d 1010, 1013 (8th Cir. 2010).

Here, the Government has alleged Defendant violated 21 U.S.C. § 331(c), which prohibits the receipt or delivery for pay of any medical device that is adulterated or misbranded. To prove a violation of § 331(c) due to adulteration as alleged, the government must show the medical device was required, but did not have, a premarket approval application in effect. 21 U.S.C. § 351(f)(1)(B). To prove a violation of § 331(c) due to misbranding as alleged, the government must show the medical device was required to have on its labeling, but did not have, (1) adequate directions for use; and (2) adequate warnings. 21 U.S.C. § 352(f).

Because each provision of 21 U.S.C. § 331(c) as charged requires proof of a fact which the others do not, Counts 2-7 and Counts 8-13 are not multiplicitous and are properly alleged.

III.   CONCLUSION

After *de novo* review of the record, the Court agrees Counts 1 through 24 of the Second Indictment sufficiently set forth the essential facts to inform Defendants of the charges they face to adequately prepare a defense. The Court further agrees Counts 2 through 7 and Counts 8 through 13 are not multiplicitous.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 129] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Dismiss the Second Superseding Indictment [ECF No. 112] is **DENIED**.

So Ordered this 7th day of April, 2021.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE